NOT FOR PUBLICATION

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT DICESARE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LINDA S. McMAHON,<br>COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>　　　　　Defendant. | CIVIL NO. 05-2554(NLH)<br><br>**OPINION** |

**APPEARANCES:**

Thomas H. Klein, Esq.
100 Broad Street
Eatontown, NJ 07724
　　　Attorney for Plaintiff

Christopher J. Christie
United States Attorney
　　　By:  Jennifer S. Rosa
　　　　　Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278
　　　Attorney for Defendant

**HILLMAN**, District Judge:

　　　This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of the

1

Plaintiff, Vincent DiCesare, for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq.   The sole issue this Court must determine is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled during the time period of his insured status (i.e., on or before December 31, 1999).[1] For the reasons stated below, this Court will affirm that decision.

**I. Background**

    A. <u>Procedural History</u>

Plaintiff filed his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on March 23, 2002, with an alleged disability onset date of February 5, 1996.  (R. at 122.)  Plaintiff alleged a number of impairments including back, neck and shoulder pain, muscle aches, and, as of October 2001, heart problems.  (R. at 122.)

Plaintiff's application for DIB and SSI was initially

---

[1]Once an individual stops working, Quarterly Credits (QCs) will be periodically reduced until an individual is no longer insured and, hence, no longer eligible for disability benefits. <u>See</u> Social Security Online, http://www.ssa.gov/OACT/ProgData (last visited Mar. 29, 2007).  In Plaintiff's case, his last regular employment outside the home occurred on the same date as Plaintiff's alleged onset of disability, February 5, 1996.  By December 31, 1999, his insured status had expired.  Therefore, for DIB to be awarded, the disability onset date must be determined to have arisen on or prior to December 31, 1999.

denied.  (R. at 13.)  Plaintiff's timely-filed Request for Reconsideration was also denied.  (R. at 13.)  A hearing was requested and held before an Administrative Law Judge ("ALJ") on May 12, 2004 in Voorhees, New Jersey.  (R. at 13.)  The ALJ issued a decision denying benefits on July 22, 2004.  (R. at 14.)

The ALJ issued an unfavorable decision finding that Plaintiff was not disabled at any time since the date of alleged onset (R. at 14.)  The ALJ found that Plaintiff retained the residual functional capacity to perform his past relevant work as an insurance agent[2] until October 26, 2001.  (R. at 18.)  On that date, Plaintiff was diagnosed with coronary artery disease and received a stent[3] placement.  (R. at 20.)  After October 26, 2001, the ALJ found that Plaintiff was no longer capable of performing his past relevant work (R. at 19), but he also found that Plaintiff could perform other work activity which exists in significant numbers in the economy (R. at 20).  Plaintiff then filed a request for review of the ALJ's decision to the Appeals Council.  (R. at 8.)  The request was denied.  (R. at 3.)  Plaintiff filed the present action with this Court, seeking judicial review of the ALJ's decision.

---

[2] In his brief, Plaintiff states that his past relevant work was "as a pill machine operator."  (Pl. Br. at 22.)  This appears to be a typographical error.  (R. at 123.)

[3] A "stent" is a "thread, rod, or catheter . . . used to provide support" to an artery.  STEDMAN'S MEDICAL DICTIONARY 1696 (27th ed. 2000).

B. Evidence in the Record

    1. Personal and Work History

Plaintiff was born on February 9, 1943 (R. at 30) and has a high school education (R. at 29).   Plaintiff currently lives with his girlfriend.  (R. at 47.)  Plaintiff testified that he last had a regular job outside the home in 1993 when he stopped working as an insurance sales representative due to depression. (R. at 29.)  On February 16, 1996, the alleged date of onset of disability, Plaintiff was involved in an automobile accident in which he contends he sustained "multiple orthopedic injuries." (R. at 29.)

Plaintiff states that he became "very disillusioned" with the practices of his last employer, Prudential Insurance Company, and, ultimately, "just didn't want to face them anymore."  (R. at 32.)  Plaintiff states that since his former job required walking house-to-house continuously and carrying a briefcase, he would not be able to perform his past work due to the injuries sustained in the automobile accident.  (R. at 33.)

2. Medical History

Plaintiff states that initially after his accident he was getting therapy; however, Plaintiff states that he was told that there was nothing that could be done for his back and neck pain. (R. at 34.)  The last time Plaintiff visited an orthopedist was in 1998 when he was told to "learn to live with this."  (R. at

4

34-35.)  Plaintiff states that he can only walk two blocks (R. at
39) or sit in the same position for 30-45 minutes before his back
pain "becomes bad."  (R. at 41.)  Plaintiff states that
"[s]ometimes just standing up and moving around a little bit will
help it."  (R. at 41.)

After Plaintiff's stent placement in October 2001, Plaintiff
visited Dr. Michael Dratch on November 19, 2001 and reported
feeling "quite well."  (R. at 270.)  Plaintiff stated that he had
no chest pain when he walked and no significant shortness of
breath.  (R. at 270.)  The examination was unremarkable and an
electrocardiogram was within normal limits.  (R. at 270.)  Dr.
Dratch stated that Plaintiff looked "excellent."  (R. at 270.)

Plaintiff returned to see Dr. Dratch on January 30, 2002.
(R. at 267.)  Dr. Dratch's examination findings were unchanged.
(R. at 267.)  Dr. Dratch recommended that Plaintiff not return to
work due to his recent stent placement and coronary disease.  (R.
at 267.)

Dr. Samuel Wilchfort examined Plaintiff on July 30, 2002.
(R. at 198.)  Dr. Wilchfort noted a history of hypertension,
coronary disease, arthritis and high cholesterol in addition to
Plaintiff's complaints of low-back pain and occasional chest
pain.  (R. at 198.)  Dr. Wilchfort stated that Plaintiff had no
trouble getting on or off the examination table or in getting
dressed or undressed.  (R. at 199.)  Plaintiff had no heart

5

murmurs and his reflexes were normal.  (R. at 199.)  Plaintiff did have difficulty moving his left shoulder and had a normal range of motion with his right arm.  (R. at 199.)  Plaintiff complained of mid- and lower-back pain as well as left shoulder pain due to his car accident.  (R. at 200.)

State Agency physician M.J. Feman, M.D., examined Plaintiff's file twice, the second time on August 14, 2002.[4]  Dr. Feman concluded in his first evaluation that Plaintiff could frequently lift and carry ten pounds, stand or walk for about six hours in an eight-hour day, sit for about six hours in an eight hour day, and push and pull without limitation.  (R. at 204.) Plaintiff was limited to frequent climbing of ladders, kneeling, crouching, and crawling and in his ability to reach in all directions, but had no other limitations.  (R. at 208.)  In Dr. Feman's second evaluation, he reached the same conclusions with the exception of finding an additional limitation in pushing and pulling in the upper extremities due to a mild impingement in the left arm.  (R. at 212.)  Plaintiff was found to have a limitation for concentrated exposure to extreme cold, heat, wetness, and humidity.  (R. at 215.)

A psychiatric evaluation was conducted by Dr. Coffey on August 26, 2002 in which Plaintiff reported seeing a Dr. Heller

---

[4]The date of Dr. Feman's first report is illegible.  (R. at 210.)

"for about a year" during 1993 and 1994 on a weekly basis.  (R. at 219.)  However, this stopped once Plaintiff was terminated from Prudential Insurance.  (R. at 219.)  Plaintiff stated that "he was not feeling the depression that he was feeling back then" and was not on any psychotropic medication.  (R. at 219.)  However, Plaintiff reported taking Lipitor for his cholesterol in addition to Celebrex for arthritis and aspirin and ibuprofen for pain.  (R. at 220.)  Plaintiff stated that he "visit[s] and plays cards with friends frequently" and has "no problem" with self-care.  (R. at 220.)  Plaintiff can also drive.  (R. at 220.)  Plaintiff also stated that he reads, watches TV and goes for walks.  (R. at 220.)

Dr. Coffey reported that Plaintiff "consistently denied depression and said that he was more 'frustrated, I guess . . . pissed off.'" (R. at 220-221.)  Dr. Coffey concluded that Plaintiff "is not depressed and does not have any suicidal ideation."  (R. at 221.)  Dr. Coffey stated that Plaintiff had good understanding, memory and concentration and adequate social relations.  (R. at 221.)  Dr. Coffey assessed Plaintiff's problems as "primarily physical" and "he cannot sit or stand for extended periods of time."  (R. at 221.)  Dr. Coffey's diagnosis was one of "chronic pain related to orthopedic problems."  (R. at 221.)

Dr. Castillo-Velez completed a psychiatric review technique

7

form on September 6, 2002.  (R. at 222.)  Dr. Castillo-Velez concluded that Plaintiff had mild limitations in daily living, maintaining social functioning and in maintaining concentration, persistence or pace.  (R. at 232.)  Dr. Castillo-Velez also concluded that there was insufficient evidence to make an assessment of Plaintiff's mental impairment prior to Plaintiff's last insured date.  (R. at 236.)  Dr. Castillo-Velez's rating of Plaintiff's mental impairment as "not severe was confirmed by Dr. Ed Kamin."  (R. at 222.)

Dr. Dratch, who had first seen Plaintiff on October 24, 2001 for his heart condition, signed a medical report stating that he had seen Plaintiff three to four times per month, most recently on January 30, 2002.  (R. at 258.)  Dr. Dratch reported that Plaintiff's chest x-ray showed no active disease.  (R. at 259.) Plaintiff had no chest discomfort and a guarded prognosis.  (R. at 260-61.)  Plaintiff reported during his January 6, 2003 visit with Dr. Dratch that he had no chest pain, pressure or tightness. (R. at 262.)  Dr. Dratch stated that Plaintiff's cardiac status and blood pressure were stable and his examination results were unchanged.  (R. at 262.)

## II. Discussion

In his July 22, 2004 decision, the ALJ found that there was substantial evidence that Plaintiff was not disabled at any time since his alleged onset date of disability on February 16, 1996.

In the ALJ's view, Plaintiff failed to demonstrate that he was disabled during his insured time period, which ended on December 31, 1999.  Plaintiff has appealed this decision.

A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly

detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no

10

requirement that the ALJ discuss in its opinion every tidbit of
evidence included in the record," Hur v. Barnhart, 94 Fed. Appx.
130, 133 (3d Cir. 2004).  In terms of judicial review, a district
court is not "empowered to weigh the evidence or substitute its
conclusions for those of the fact-finder."  Williams, 970 F.2d at
1182.  Moreover, apart from the substantial evidence inquiry, a
reviewing court is entitled to satisfy itself that the
Commissioner arrived at his decision by application of the proper
legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker,
721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp.
791, 793 (D.N.J. 1981).

B.   Standard for Disability Insurance Benefits

The Social Security Act defines "disability" for purposes of
an entitlement to a period of disability and disability insurance
benefits as the inability to engage in any substantial gainful
activity by reason of any medically determinable physical and/or
mental impairment which can be expected to result in death, or
which has lasted or can be expected to last for a continuous
period of not less than 12 months.  See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as
disabled only if his physical or mental impairments are of such
severity that he is not only unable to perform his past relevant
work, but cannot, given his age, education, and work experience,
engage in any other type of substantial gainful work which exists

11

in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.  If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.  If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.  If he is incapable, he will be found "disabled."  If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.

12

See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

Here, the ALJ issued an unfavorable opinion in finding that Plaintiff retained the residual functional capacity to perform his past relevant work prior to October 26, 2001.  After that date, the ALJ determined that Plaintiff was unable to perform his past relevant work, but also determined that Plaintiff was able to make the necessary occupational adjustments to perform other work activity which exists in significant numbers in the national economy.

C.   Plaintiff's Arguments

Plaintiff argues that the Commissioner's decision denying him benefits was incorrectly decided because the ALJ erred in determining that there was "substantial evidence" that Plaintiff was not disabled during the time period of his insured status on

13

or before December 31, 1999.  Specifically, Plaintiff argues that
(1) the ALJ's determination at step three that Plaintiff's
impairment did not meet or equal a listing is not supported by
substantial evidence, that (2) the ALJ improperly assessed
Plaintiff's residual functional capacity at step four, that (3)
Plaintiff's credibility was not properly assessed, and that (4)
the vocational guidelines were improperly applied at step five.
For the following reasons, this Court will affirm the decision of
the ALJ and Plaintiff's application will be denied.

1.  **Whether the ALJ's determination that Plaintiff's
    impairment did not meet or equal a listing is supported
    by substantial evidence**

Plaintiff contends that the ALJ did not properly consider
whether his impairment met or equaled the severity of a listing.
The Commissioner counters that the medical evidence needed to
support a disability finding is simply not present in the record.

The Third Circuit addressed Plaintiff's argument in Burnett
v. Comm'r of Soc. Sec. Admin., 220 F.3d 112 (3d Cir. 2000).  In
Burnett, the ALJ's analysis of whether Burnett's impairment
matched or was equivalent to a Listed Impairment consisted, in
its entirety, of the following language: "Although [Burnett] has
established that she suffers from a severe musculoskeletal
[impairment], said impairment failed to equal the level of
severity of any disabling condition contained in Appendix 1,
Subpart P of Social Security Regulations No. 4."  Burnett, 220

14

F.3d at 119.  The Third Circuit found the ALJ's "conclusory statement" to be "beyond meaningful judicial review" and "hopelessly inadequate," explaining that the ALJ failed to address any of the evidence and did not even mention which specific listed impairment applied to Burnett's case.  Id. at 119-20.

Subsequent cases have clarified the concerns expressed by the Third Circuit in Burnett.  In Jones v. Barnhart, 364 F.3d 501 (3d Cir. 2004), the court held that the ALJ's analysis of whether the claimant's impairment met the requirements of any Listing of Impairments satisfied the Burnett standard.  Id. at 504-05.  The court stated that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  Id. at 505.  The court then found that, "read as a whole," the ALJ's decision reviewed and considered the necessary factors.

In Ochs v. Comm'r of Soc. Sec. Admin., 187 Fed. Appx. 186 (3d Cir. 2006), the court stated that a specific listing need not be explicitly mentioned by the ALJ as seemed to be required under Burnett.  The court made plain that, under the Jones standard, Burnett "does not require the ALJ to use particular language . . . . [T]he function of Burnett is to ensure that there is

15

sufficient development of the record . . . ."  Id. at 189

(citation omitted).  The court went on to reiterate the standard

for rejecting evidence, stating that "the ALJ is not required to

supply a comprehensive explanation for the rejection of evidence;

in most cases, a sentence or short paragraph would probably

suffice."  Id. (quoting Cotter, 650 F.2d at 482); see also

Santiago v. Comm'r of Soc. Sec. Admin., 131 Fed. Appx. 344, 346

(3d Cir. 2005); Williams v. Comm'r of Soc. Sec. Admin., 156 Fed.

Appx. 501, 504-06 (3d Cir. 2005); Jaramillo v. Comm'r of Soc.

Sec. Admin., 130 Fed. Appx. 557, 561-62 (3d Cir. 2005).

Contrary to Plaintiff's argument that the ALJ did not

properly consider whether his impairment met or equaled the

severity of a listing, the subsequent development of the record

and the ALJ's extensive evaluation of the medical evidence proves

otherwise.  Plaintiff contends that the ALJ referred to

Plaintiff's "disc disease," in particular, and then "summarily

reject[ed] the Listings as a basis of disability," but Plaintiff

ignores the ALJ's analysis two paragraphs later of Dr. Godfrey's

evaluations of Plaintiff.  (R. at 15.)  Even though Dr. Godfrey's

report recorded his treatment of Plaintiff for cervical and

lumbar strain and degenerative disease, the ALJ specifically

noted that "Dr. Godfrey did not impose any limitations upon the

claimant."  (Id.)

The ALJ also cited extensively the observations of Dr.

16

Wilchfort in June 2002.  The ALJ noted that despite the fact that Dr. Wilchfort was aware of Plaintiff's "pain in the cervical spine . . . , [t]he claimant was in no apparent distress. [Plaintiff] had no difficulty getting on/off the examination table.  He was able to dress/undress without assistance . . . ." (R. at 16.)  Dr. Coffey's observations were similarly unremarkable in noting that Plaintiff went for walks, frequently visited and played cards with friends and could drive.  (R. at 220.)

The ALJ did not specifically mention a listing because doing so is not required.  What is required is a "sufficient development of the record and explanation of findings to permit meaningful review."  Jones, 364 F.3d at 505.  The ALJ did reference the disabilities mentioned by Plaintiff, specifically "disc disease," and explained, by citing the medical reports of various physicians who treated Plaintiff, that the record simply did not contain the requisite evidence that would support a finding that his impairment met or equaled the severity of a listing.

Plaintiff has also failed to recognize the significance of the language used by the ALJ when referring to Plaintiff's failure to meet the burden of proof.  The ALJ's conclusion that "the record does not contain specific documentation necessary to establish disability" indicates a failure to meet the burden

17

imposed upon the claimant at step three to show that he suffers
from a "severe" impairment.  (R. at 15.)  Plaintiff's argument
overlooks the relevance of his failure to meet his burden of
proof, as well as cases finding language similar to that used by
the ALJ in this case sufficient.  See McCrea v. Comm'r of Soc.
Sec., 370 F.3d 357, 360-361 (3d Cir. 2004); Williams, 156 Fed.
Appx. at 505 (finding ALJ's statement that the record "does not
disclose medical findings which meet or equal in severity the
clinical criteria of any impairment listed" adequately
facilitated judicial review).

   **2.   Whether the ALJ properly assessed Plaintiff's residual
        functional capacity at step four**

        Plaintiff next contends that the ALJ performed no
"individual function by function assessment" of Plaintiff's
ability to perform his past relevant work experience.  (Pl. Br.
at 22.)  This argument must also fail.  In finding that Plaintiff
was capable of performing his past relevant work as an insurance
agent prior to October 26, 2001 and light and sedentary work
after October 26, 2001, the ALJ incorporated the limitations of
Plaintiff in the hypothetical he posed to the vocational expert
and extensively referenced the conclusions drawn by the various
physicians who treated Plaintiff.  (R. at 15-18.)

        Dr. Wilchfort's opinion was one of those specifically
mentioned by the ALJ.  In his June 2002 report, Dr. Wilchfort
noted Plaintiff's history of low back pain, chest pain,

18

arthritis, and coronary disease, but the ALJ relied on Dr. Wilchfort's conclusions that "[t]he claimant was in no apparent distress.  [Plaintiff] had no difficulty getting on/off the examination table.  He was able to dress/undress without assistance . . . ."  (R. at 16.)  The only limitations that Dr. Wilchfort found noteworthy were those with respect to Plaintiff's left arm and his lumbar spine that was "aggravated by bending."  (Id.)  The ALJ incorporated both of these difficulties into his residual functional capacity analysis when he posed his hypothetical to the vocational expert.  Specifically, the ALJ instructed the vocational expert to assume an individual that would be required to "occasionally . . . climb stairs, bend and stoop, and reach vertically with the left, non-dominant arm."  (R. at 19.)

This was also consistent with the findings of the State Agency physician, Dr. Feman, that Plaintiff was capable of light work with postural limitations and restrictions on reaching with the left arm.  (R. at 204-08, 212-15.)  The inclusion in the ALJ's hypothetical to the vocational expert of a limitation of only occasionally being able to bend and reach due to lower back and left shoulder pain directly contradicts Plaintiff's contention that an individualized assessment was not performed by the ALJ.

Plaintiff's argument that the ALJ failed to include

Plaintiff's "symptoms and non-exertional limitations" is also inaccurate.  (Pl. Br. at 23.)  There is extensive discussion in the record of Plaintiff's symptoms and non-exertional limitations and the evaluations of a number of physicians noting those symptoms.  (R. at 15-18.)  With regard to the alleged non-exertional limitation of depression, the ALJ found the impairment to be "not severe."  (R. at 15.)  Plaintiff stated that he was not currently feeling as depressed as he was during the time of his discharge and that he was not taking any psychotropic medication.  (R. at 219-20.)  Dr. Cofey noted that Plaintiff denied depression and stated that he was "frustrated" and "pissed off."  (R. at 221.)  Dr. Coffey concluded that Plaintiff had a high average intelligence with good insight and judgment, had good understanding, memory and concentration, and that there was no evidence of a thought disorder or suicidal ideation.  (Id.)

The ALJ also properly relied on the conclusions of the State Agency doctor, Dr. Castillo-Velez, in finding that prior to October 26, 2001, Plaintiff maintained the residual functional capacity to perform his past relevant work as Plaintiff's depression was "not severe."  The Commissioner has promulgated Social Security Rulings ("SSR"), binding upon the ALJ, describing the relevance and weight to be afforded the opinions of both State Agency consultants and treating physicians.  20 C.F.R. § 402.35(b)(1).  SSR 96-6p states that while the ALJ is responsible

for finding whether or not a particular Listing of Impairments is met, an ALJ "may not ignore" the opinions of State Agency consultants.  Also, if the State Agency consultant's opinion is based on "a complete case record" and "more detailed and comprehensive information than what was available to the individual's treating source," then the State Agency consultant's opinion may be "entitled to greater weight than the opinions of treating or examining sources."  SSR 96-6p.

Dr. Castillo-Velez found, after reviewing the case file, that Plaintiff had only mild limitations in activities of daily living, maintaining social functioning and concentration, persistence, or pace.  (R. at 232.)  Additionally, Dr. Castillo-Velez found Plaintiff's mental impairment to be "not severe." (R. at 234.)  As such, the ALJ was in accordance with SSR 96-6p when citing the conclusions of State Agency physician Dr. Castillo-Velez in finding Plaintiff's depression to be "not severe."  As Plaintiff was not prevented from performing his past relevant work as an insurance agent prior to October 26, 2001 due to any physical or mental impairment of sufficient severity, the ALJ properly found against Plaintiff at step four.

### 3.   Whether the ALJ properly assessed Plaintiff's credibility

Plaintiff's contentions that the ALJ discounted Plaintiff's testimony and failed to follow SSR 96-7p are also inaccurate. SSR 96-7p states:

> It is also not enough for the adjudicator
> simply to recite the factors that are
> described in the regulations for evaluating
> symptoms. The determination or decision must
> contain specific reasons for the finding on
> credibility, supported by the evidence in the
> case record, and must be sufficiently
> specific to make clear to the individual and
> to any subsequent reviewers the weight the
> adjudicator gave to the individual's
> statements and the reasons for that weight.

SSR 96-7p.  Examples of symptoms that an ALJ might consider are

"pain, fatigue, shortness of breath, weakness, or nervousness."

SSR 96-7p.  In addition, it is within the ALJ's discretion "'to

evaluate the credibility of a claimant and to arrive at an

independent judgment, in light of medical findings and other

evidence, regarding the true extent of the pain alleged by the

claimant.'"  Brown v. Schweiker, 562 F. Supp. 284, 287 (E.D. Pa.

1983) (quoting Bolton v. Secretary of Health & Human Servs., 504

F. Supp. 288, 291 (E.D.N.Y. 1980)).

     The ALJ specifically stated that "the claimant's subjective

complaints of intensity, frequency, duration, pain, discomfort

and resulting limitations are generally credible, however not to

the extent alleged when compared to the totality of the record."

(R. at 18.)  The ALJ's finding regarding Plaintiff's credibility

was that even assuming that Plaintiff's complaints were credible,

the totality of the medical evidence of record did not support a

finding for Plaintiff with regard to a functional limitation.

(R. at 17.)  After stating that he "carefully consider[ed] the

criteria as outlined in SSR 96-7p," the ALJ referenced the fact
that "claimant's only pain medications through July 1998, was
[sic] over-the-counter Ibuprofen.  Evaluation of July 1998
revealed decreased range of motion, however MRI demonstrated only
small herniated disc . . . ."  (Id.)

        The ALJ also referred to Plaintiff's statements to a number
of doctors during the period from October 21, 2001 through
January 2003.  Plaintiff stated that he was "feeling well" and
"denied chest pain . . . pressure or tightness, shortness of
breath, or fatigue."  (R. at 17.)  Plaintiff told Dr. Dratch that
he had no "chest pain, pressure or tightness."  (R. at 18.)  Dr.
Dratch concluded that Plaintiff "was not in any distress."  (Id.)
In sum, the Plaintiff's minimal use of pain medication, his MRI
results, the statements made by Plaintiff to various physicians,
and the conclusions of those physicians provided substantial
evidence for the ALJ to conclude that while Plaintiff's
complaints were largely credible, they were not fully credible to
the extent alleged by Plaintiff and did not indicate the level of
severity necessary to find the existence of a functional
limitation.

        **4.   Whether the vocational guidelines were properly
             applied**

        In his final argument, the Plaintiff contends that the ALJ
failed to consider the testimony of a vocational expert.  This
argument is also unavailing.  After the ALJ determined at step

four that Plaintiff could not perform his past relevant work as of October 26, 2001, the ALJ next analyzed whether Plaintiff was capable of performing other work within the national economy. (R. at 19-20.)  In doing so, the ALJ considered the testimony of a vocational expert and utilized the Medical-Vocational Guidelines.  20 C.F.R. §§ 404.1569, 416.969.

The ALJ noted the testimony of the vocational expert, Mr. Hamilton, where Mr. Hamilton stated that a hypothetical individual with Plaintiff's characteristics after October 26, 2001 would be able to perform work as an "insurance clerk, with approximately 3,000 jobs in the regional economy; and telemarketing representative, with approximately 1,000 jobs in the regional economy."  (R. at 19.)  In addition, the ALJ stated in his conclusion that "[c]onsidering [Plaintiff's] residual functional capacity; the vocational factors of his age, education and past relevant work experience; and the testimony of the vocational expert, the Administrative Law Judge finds that the claimant is able to make the necessary occupational adjustments to perform other work activity . . . ."  (R. at 20.)  In conclusion, the ALJ's reference to the testimony of the vocational expert with regard to other jobs Plaintiff could perform, coupled with the ALJ's explicit reliance upon that testimony in drawing his conclusions, contradict Plaintiff's contention that only the Medical-Vocational Guidelines were

24

relied upon by the ALJ.


**III.   <u>CONCLUSION</u>**

For the reasons stated above, the Commissioner's finding
will be affirmed.  An accompanying Order will be entered.


DATE: May 4, 2007              <u>s/ Noel L. Hillman</u>

At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

25